*42
 
 Matthias, J.
 

 The single question presented to this court is whether the policy of insurance issued to the plaintiffs obligated the defendant insurance company to defend the action brought against the plaintiffs and to satisfy the judgment rendered.
 

 The issue of reformation was disposed of by the Court of Appeals upon the evidence adduced relating to the conversations had at the time the contract of insurance was entered into. We deem it sufficient to state that the record fails to disclose evidence of a clear and convincing character such as is required to entitle the plaintiffs to the remedy of reformation. See 35 Ohio Jurisprudence, 201 and 212, Sections 63 and 73.
 

 The insurance policy in question was designated “Automobile Policy,” to which was attached an endorsement designated “Grarage Liability Endorsement (Payroll Basis).” This endorsement provided in part as follows:
 

 “Coverage — The Bodily Injury Liability and Property Damage Liability as afforded under Coverages A and B in the Declarations of the policy are hereby adopted and made effective for the purpose of this endorsement. * * *
 

 “Definition of Insured — The Insured named in Item 1 of the Declarations of the policy may include not only the Named Insured but also any member of the firm if the Named Insured is a partnership; or the president, vice-president, secretary, treasurer, and general manager of the corporation if the Named Insured is a corporation, providing, however, that such partners or officers appear as Additional Insureds in this endorsement.
 

 “Automobile Liability — The policy shall cover the operation -of any automobile or trailer owned by or in charge of the Named Insured for purposes necessary to the conduct of the Named Insured’s business classi
 
 *43
 
 fied as Automobile Sales Agency or G-arage and use of sucb automobile for pleasure purposes * * * .
 

 “Premises Liability — Coverage A of tbe policy, Bodily Injury Liability, is extended, subject to the conditions and limitations of this policy, to cover injuries including death at any time resulting therefrom sustained by any person or persons (not employed by the Insured) on or about the premises described in Item 1 of the Declarations and caused by the operations which are necessary to the conduct of the Named Insured’s business as described herein.
 

 “Premium Computation — The premium for this endorsement and the policy of which it forms a part is based upon the entire compensation of all proprietors, active executive officers, managers, salesmen, clerical force, mechanics, chauffeurs and other employees of the Insured, except that no premium charge shall be made upon any portion of the compensation of any proprietor, active executive officer, manager or salesman, in excess of two thousand dollars ($2,000.00) per annum; all other employees shall be included at the actual paid remuneration (including commission, bonuses and other compensation).
 

 “The advance premium for this insurance is $70.00, based on the estimated annual payroll of $5,000.
 

 “The agreed rate for this -insurance is $1.10 for Bodily Injury Liability and $0.30 for Property Dam.age Liability, for each $100 of annual payroll.
 

 “If during the policy period, the entire compensation of payroll thus computed exceeds the advance premium set forth herein, the Insured shall immediately pay the company the additional premium earned; if such entire compensation -or payroll thus computed be less than the premium herein set forth, the company will return the unearned premium when determined but will retain $70.00, which amount shall be the minimum premium.
 

 
 *44
 
 “Customers — -In consideration of an additional premium of $6.25 it is understood and agreed that this policy is extended subject to all its limitations and conditions to cover customers of the Named Insured while riding in or operating an automobile owned by the Named Insured while being used for the purposes described in this policy. Coverage shall not extend to customers with respect to automobiles which such customers have purchased on' an instalment payment plan.
 

 “This endorsement is subject to the terms, conditions, limitations and agreements of the policy to which it is attached in so far as the same are not inconsistent with the specific undertakings of this endorsement.
 

 “This endorsement when countersigned by a duly authorized agent of the company and attached to Policy No.-A32994 issued to Workman and Sayles shall be valid and form a part of said policy.”
 

 Coverages A and B as set forth in the Declarations are defined in the policy as follows:
 

 “The Republic Mutual Insurance Co., Columbus, Ohio, a legal Reserve Mutual Insurance Company herein called the company, hereby agrees with the insured, named in the declarations and application, which application and declarations are made a part hereof, in consideration of the payment of the premium and of the statements contained in the application and declarations and subject to the limits of liability, exclusions, conditions and other terms of the policy;
 

 “Damage by the Automobile—
 

 “1. Coverage A — Bodily Injury Liability — To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services because of bodily injury, including death resulting therefrom, sustained by any person or persons other than the Named Insured, caused by accident and arising out of the own
 
 *45
 
 ership, maintenance, or use of the described automobile.
 

 “2.
 
 Coverage B — -Property Damage Liability — To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the described automobile.
 

 “3. Supplementary Provisions — The company agrees in event of such injury or damage:
 

 “(a) To defend in his name and behalf any suit against the insured alleging such injury or damages, even if such suit is groundless, false or fraudulent; but the company shall have the right to settle any claim or suit and to make such investigation or negotiation as may be deemed expedient by the company;
 

 “ (b) To pay all premiums on bonds to release attachments not in excess of the applicable policy limits, all premiums on appeal bonds required on the appeal from a judgment which is not in excess of the policy limits, or a prorata amount of the premium on appeal bonds required on the appeal from a judgment in excess of the limits, all costs taxed against the insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered, or has deposited in court the amount of the company’s liability thereon;
 

 “(c) To pay any expense incurred by the insured, in the event of bodily injury, for such immediate medical and surgical .relief to others as shall be imperative at the time of the accident.”
 

 In the “Exclusions” said policy provided:
 

 “10. Exclusions — This policy under Coverages A and B excludes any obligation of the company:
 

 
 *46
 
 “(b) For any accident which occurs after the Named Insured’s interest in the automobile, has been transferred without the written consent of the company. ’ ’
 

 Plaintiffs contend there is ambiguity in the. contract in that the provisions of the endorsement and the provisions of the policy are in conflict. Neither the Court of Common Pleas nor the Court of Appeals announced a finding" of any such ambiguity. The right of the insured must arise from the terms of the contract, and the policy and the endorsement are to be considered as component parts of a single contract. The endorsement must be regarded as a modification of the terms of the original contract of insurance if a clear inconsistency, appears.
 

 It is to be observed that the endorsement provides as follows:
 

 “This endorsement is subject to the terms, conditions, limitations and agreements of the policy to which it is attached in so far as the same are not inconsistent with the specific undertakings of this endorsement.”
 

 It can scarcely be contended that the ordinary automobile liability insurance policy to which the endorsement was affixed would cover the liability here sought to be imposed, for such policies usually designate the specific automobiles covered. It follows that if Workman and Sayles are afforded indemnity, such must come within the provisions of the endorsement denominated “Glarage Liability Endorsement.” The liability clauses in such endorsement (excluding customers’ liability which is not here involved) are two:
 

 1. “Automobile Liability — The policy shall cover the operation of any automobile or trailer owned by or in charge of the named insured for purposes necessary to the conduct of the named insured’s business classified as automobile' sales agency or garage and use of such automobile for pleasure purposes * *
 

 
 *47
 

 2.
 
 “Premises Liability — Coverage A of the policy, bodily injury liability, is extended, subject to the conditions and limitations of this policy, to cover injuries including death at any time resulting therefrom, sustained by any person or persons (not employed by the insured) on or about the premises described in item 1 of the declarations and caused by the operations which are necessary to the conduct of the named insured’s business as described herein.”
 

 It is claimed that the injury for which liability is sought to be imposed resulted from negligence which took place on the premises of the insured, and therefore that the provisions of the “Premises Liability” clause apply. However, by the express language of the clause, it applies only to “injuries * * * sustained by any person or persons (not employed by the insured) on or about the premises described in item 1 of the declarations and caused by the operations which are necessary to the conduct of the named insured’s business as described therein. ’ ’
 

 No injuries were sustained by Kidwell “on or about the premises described.” This court cannot so extend this provision of the insurance contract as to make it apply to injuries sustained, elsewhere. The liability covered is clearly designated “Premises Liability” and cannot be otherwise construed. There is no language in the insurance contract which can be construed to insure against liability for injuries resulting from defective parts or inefficient workmanship.
 

 The “Automobile Liability” provision of the endorsement covers “any automobile or trailer
 
 owned by or in charge
 
 of the named insured for purposes necessary to the conduct of the named insured’s business * * (Italics ours.)
 

 No claim is made that the automobile which was driven by Harley Rhodes was in charge of the named
 
 *48
 
 insured at the time of the accident. But it is claimed that the automobile was owned by the insured by reason of the single fact that the title thereto had not been actually transferred to the purchaser thereof in accordance with Section 6290-2
 
 et seq.,
 
 General Code.
 

 The policy to which the endorsement is attached expressly excludes liability, for damages resulting from “any accident which occurs after the named insured’s interest in the automobile has been transferred without the written consent of the company.” This exclusion is not applicable here, for this endorsement covers automobiles though not owned by the insured but which the insured has “in charge.”
 

 The only remaining question is whether the automobile was owned by the insured at the time of the injury. It is undisputed-that on June 27, the automobile was delivered to Mrs. Rhodes, mother of Haidey Rhodes, she being the purchaser of the automobile; and that she had signed an instalment note to evidence the purchase price in the sum of $118, executed a chattel mortgage securing same and signed an application for transfer of the certificate of title which plaintiffs as vendors had delivered to her. This application she then redelivered to Sayles, one of the plaintiffs, for filing with the clerk of courts of Holmes county within the three days permitted by law. The accident and consequent injury occurred the next day after completion of the transaction.
 

 Without deciding whether the
 
 legal
 
 title had passed, actual ownership with complete possession and control had certainly passed to Mrs. Rhodes, and if
 
 legal
 
 title had not been transferred as agreed, her right to a certificate of title was enforceable.
 
 Automobile Finance Co.
 
 v.
 
 Munday,
 
 137 Ohio St., 504, 30 N. E. (2d), 1002.
 

 
 *49
 
 Since the policy does not by its terms cover an accident such as that involved in this controversy, the judgment of the Court of Appeals is in all respects affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Hart, Zimmerman and Bell, JJ., concur.
 

 William's and Turner, JJ., not participating.