PERKOWSKI ET AL., APPELLEES, *v.* MEGAS CORPORATION ET AL.; POLSTER, APPELLANT.

(No. 89CA004652—Decided June 27, 1990.)

*Kenneth B. Burns,* for appellees.
*Thomas Paris,* for appellant.

CACIOPPO, J. This cause came before the court upon the appeal of Edward Polster, defendant-appellant, from the trial court's grant of summary judgment to Casimir E. Perkowski and his daughters, coplaintiffs-appellees ("Perkowski"). We affirm.

Polster, an attorney, had a radio talk show on station WJW (AM 850) called the Ed Polster Financial Talk Show. During 1985 Polster promoted participation contracts in certain oil wells sold by Megas Corporation and Megas Energy Corporation. Polster received income from Megas for promoting the oil well investments. He received approximately $7000 in periodic installments of either $500 or $1000 over the course of 1985. These payments, described by Polster as compensation pursuant to an "informal arrangement" for "advertising" on behalf of Megas, are the subject of this appeal.

Casimir Perkowski purchased for himself and his daughters eight participation agreements for interests in certain gas wells from Megas Corporation and Megas Energy Corporation for a total of $30,600 during the first six months of 1985.[1]

On February 3, 1987 Perkowski filed an eight-count complaint alleging that Polster, along with codefendants Megas Corporation, Megas Energy Corporation and H. David Wallick, engaged in the sale and promotion of unregistered securities in violation of securities regulations as found in R.C. 1707.01 to 1707.45. Pursuant to R.C. 1707.43 Perkowski asserted that he was entitled to rescind the sales agreements and receive the monies he had paid for the unregistered securities.

On January 29, 1988 the trial court granted a default judgment in favor of Perkowski against Megas Corporation, Megas Energy Corporation, and H. David Wallick.

Perkowski filed a motion for summary judgment against Polster on May 31, 1989. Subsequently, the trial court

---

[1] See Appendix, *infra.*

granted Perkowski's motion. Polster filed a timely notice of appeal raising a single assignment of error:

"The trial court erred in granting plaintiff-appellees' motion for summary judgment because there is a genuine issue of material fact which a court or jury should decide after hearing all the evidence."

The issue before this court is whether Polster is exempted under R.C. 1707.431(B) for an alleged violation of R.C. 1707.01 to 1707.45, as a person involved in the sale of unregistered securities.

As a preliminary matter, this court affirms the trial court's grant of summary judgment as to the four contracts made before April 11, 1985, the effective date of R.C. 1707.431, the statute under which Polster seeks exemption.

Whether a statute may be constitutionally applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply. *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 106, 522 N.E. 2d 489, 491. In the instant case, we have examined R.C. 1707.431 and find nothing that would indicate that the General Assembly intended the exemptions found in R.C. 1707.431 apply to violations of the securities laws that occurred prior to April 11, 1985.

The following facts are not disputed: (1) the oil and gas wells participation agreements were securities within the meaning of R.C. 1707.01(B); (2) a sale of these securities to Perkowski occurred as defined by R.C. 1707.01(C)(1); (3) two certificates from the division of securities of the Ohio Department of Commerce indicate that neither Megas Corporation nor Megas Energy Corporation had filed for registration of their oil and gas well participation agreements as required by R.C. 1707.30; (4) R.C. 1707.43 provides that the agreements are voidable at the election of the purchaser.

Further, R.C. 1707.43 provides, in pertinent part:

"* * * The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to such purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by such purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision."

In this case, the trial court found that Polster aided Megas Corporation in the sale of unregistered securities. Polster accomplished this through his promotions on his radio talk show, his endorsement of the sale of these gas well agreements in a pamphlet entitled "The Megas Report" dated June 8, 1984, as well as serving as a conduit for information on the sale of these unregistered securities through the listing of his name and telephone number on the pamphlet Megas Report dated April 10, 1985.

We agree the trial court correctly determined there is no issue of material fact concerning Polster's violation of the securities laws that would preclude the imposition of summary judgment. Therefore, without further comment, we affirm the trial court's grant of summary judgment in favor of the Perkowskis concerning the four contracts, worth $15,000, executed prior to April 11, 1985, the effective date for R.C. 1707.431.

We now turn to the issue of whether the grant of summary judgment was proper with respect to Polster's activities in the sale of four oil and gas well agreements which Perkowski purchased on April 16 and May 21, 1985 for $15,600. Further, we

must address the issue whether Polster is exempt from liability for the sale of unregistered securities under R.C. 1707.431(B).

In reviewing a trial court's order granting summary judgment, an appellate court must follow the standards articulated in *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274:

"Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

Polster submits that he is protected from liability under R.C. 1707.431(B) since he received no compensation for sale of securities by the other codefendants to Perkowski.

R.C. 1707.431 states, in pertinent part:

"For purposes of this section, the following persons shall not be deemed to have effected, participated in, or aided the seller in any way in making, a sale or contract of sale in violation of sections 1707.01 to 1707.45 of the Revised Code:

"* * *

"(B) Any person who brings any issuer together with any potential investor, without receiving, directly or indirectly, a commission, fee, or other remuneration based on the sale of any securities by any such issuer to any such investor.* * *"

Polster admits that he received $500 or $1000 periodically over the course of 1985 through an informal arrangement he made with Megas. Polster contends that his remuneration was an "advertising" fee for promoting Megas and their oil investments. However, the trial court noted that the money given to Polster, characterized by him as an "advertising" fee, was not paid to the radio station for commercial advertising time. Characterizing this informal compensation agreement as an "advertising" fee and not as a form of an indirect fee, commission or other remuneration for bringing an issuer and a purchaser together is exalting form above substance.

Polster also contends that since he did not receive money from Perkowski or any other person for the sale of the unregistered Megas or Megas Energy Corporation securities, he is entitled to the exemption found in R.C. 1707.431 (B). We disagree.

The trial court was correct in finding that Polster received remuneration for bringing issuers and purchasers together, and that he is not entitled to the protection of R.C. 1707.431(B). The money Polster received was not a commercial advertising fee paid to the radio station but a form of indirect commission, fee, or other remuneration based on the sale of securities by an issuer to an investor, in violation of the securities statutes. Furthermore, we note that the record reveals that Polster was not a mere advertising conduit, but that Polster also sent a letter to Perkowski on May 24, 1985, asking for the return of the contracts and check for payment for an interest in the Anderson and Weaver Wells.

Accordingly, we conclude that Polster received an indirect fee for bringing an issuer and an investor together for the purpose of purchasing an unregistered security in violation of R.C. 1707.01 to 1707.45. Construing the evidence most strongly in favor of Polster we find that there is no issue of

material fact and that Polster is not entitled to the exemption provided by R.C. 1707.431(B). Polster's assignment of error is without merit. The order granting Perkowski summary judgment is affirmed.

*Judgment affirmed.*

BAIRD, J., concurs.

QUILLIN, P.J., concurs in judgment only.

## APPENDIX

Purchases by Casimir Perkowski with Megas Corporation Oil and Gas Well Interests

| Date | Interest | Amount |
|------|----------|--------|
| 1. Feb. 4, 1985 | 1/64 in Megas McLain #5 | $3,750. |
| 2. Feb. 4, 1985 | 1/64 in Megas McLain #5 | $3,750. |
| 3. Feb. 6, 1985 | 1/64 in Megas McLain #5 | $3,750. |
| 4. Feb. 6, 1985 | 1/64 in Megas McLain #5 | $3,750. |
| 5. April 16, 1985 | 1/64 in Weaver Well #1 | $3,900. |
| 6. April 16, 1985 | 1/64 in Anderson #1 | $3,900. |

Purchases by Casimir Perkowski with Megas Energy Corporation

| | | |
|------|----------|--------|
| 7. May 21, 1985 | 1/64 in Anderson #1 | $3,900. |
| 8. May 21, 1985 | 1/64 in Weaver Well #1 | $3,900. |