ESTE OILS COMPANY, Appellant,

v.

FEDERATED INSURANCE COMPANY, Appellee.

[Cite as *Este Oils Co. v. Federated Ins. Co.* (1999), 132 Ohio App.3d 194.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980048.

Decided Feb. 8, 1999.

*Cash, Cash, Eagen & Kessel* and *Robert B. Cash,* for appellant.

*Montgomery, Rennie & Jonson, L.P.A., James J. Montgomery* and *Elizabeth A. McCord; Meagher & Geer, P.L.L.P., Charles E. Spevacek* and *Nicholas A. Gumpel,* for appellee.

*Dinsmore & Shohl, L.L.P., Gerald V. Weigle, Jr.* and *Douglas R. Dennis; Wiley, Rein & Fielding, Laura A. Foggan, Daniel E. Troy* and *John C. Yang,* for *amicus curiae,* Insurance Environmental Litigation Association.

*Per Curiam.*

Plaintiff-appellant Este Oils Company ("Este") appeals from the decision of the trial court granting summary judgment to defendant-appellee Federated Insurance Company ("Federated") on Este's claims against Federated for indemnification and the costs of a defense.

## THE FACTS

Este is an oil delivery company. On November 7, 1990, Este made a delivery of home heating oil to the home of Mark and Melody Weil, pursuant to a prior agreement for such delivery. Unbeknownst to the driver of the Este delivery truck, however, the oil tank in the basement of the Weil home had been removed. The delivery pipe on the outside of the house had not been removed or "capped off" and was open into the basement itself. As Este pumped the three hundred twenty gallons of oil into the Weil home, the oil went through the pipe and directly into the Weils' basement, causing property damage.

The Weils sued Este for damages. Este sought indemnity and a defense from Federated under a Business Auto Policy and a Commercial General Liability Policy ("CGL Policy"). Federated refused, claiming that coverage was clearly excluded under the insurance policies. Este filed a third-party complaint against Federated, apparently relying only on coverage under the Business Auto Policy. Este and Federated filed cross-motions for summary judgment on the third-party complaint. The trial court ruled in favor of Federated. This court reversed that decision in *Weil v. Este Oils Co.* (1994), 93 Ohio App.3d 759, 639 N.E.2d 1215 ("*Este I*").

After the appellate decision reversed the judgment in favor of Federated, Este dismissed its third-party complaint against Federated because the Weils had dismissed their claim against Este in order to pursue binding arbitration.[1] Este then resolved its claims with the Weils for $21,000 in damages.

On October 12, 1995, Este filed a new action (this case) against Federated, alleging that Federated had refused to defend or indemnify Este in the lawsuit filed by the Weils. In addition to the $21,000 paid to the Weils, Este sought to recover $56,060.75 in fees and costs incurred to defend against the Weils' claim and to seek to enforce coverage under the Federated policies. Federated again denied that it owed indemnification or a defense. Each side moved for summary judgment, and the trial court again granted summary judgment to Federated, holding that Federated owed Este neither indemnity nor a defense. The trial

---

1. We assume, although it is not in this record, that the dismissal was without prejudice, because Federated has not protested this point.

court specifically held that fuel oil is a pollutant and that the property damage suffered by the Weils was excluded from coverage under the pollution exclusion provision in the Business Auto Policy. Este again appeals, arguing in two assignments of error that the trial court erred in granting summary judgment to Federated and in failing to grant summary judgment to Este.

## SCOPE OF PRESENT APPEAL

When the new complaint was filed, Este raised coverage issues under both the Business Auto and the CGL policies in the trial court. Federated argued below that Este should be limited in its arguments to the Business Auto Policy, because it never raised the CGL coverage to the trial court in *Este I* and because the remand order of this court was limited to the Business Auto Policy. Este, on the other hand, argues that on remand it was free to raise the CGL coverage issues, as they were not determined one way or the other by this court in *Este I*. The trial court apparently agreed with Federated, limiting its decision only to the Business Auto Policy.

We also agree with Federated. The remand order from this court limited the issues on remand to the Business Auto Policy. Despite the dismissal and refiling of the case, Este cannot ignore this mandate.

## MERITS

In its two assignments of error, Este argues that the trial court erred in granting summary judgment to Federated and in failing to grant summary judgment to it. We disagree as to the issue of indemnification and affirm the judgment of the trial court on this issue, although not for the reasons given by the trial court.

We review summary judgment issues *de novo. Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 78–79, 506 N.E.2d 212, 215. A trial court can be right for the wrong reason, and when this happens, there will be an affirmance. *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80, 90, 658 N.E.2d 814, 820, citing *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 637 N.E.2d 306.

## INDEMNIFICATION

The undisputed facts in this case are that on November 7, 1990, Este made a delivery of home heating oil to the home of Mark and Melody Weil, pursuant to a prior agreement for such delivery. The delivery pipe on the outside of the home remained intact, but had never been "capped off" and was open into the basement itself. As Este delivered the oil to the Weils' home, the oil went through the pipe

and directly into the Weils' basement, causing property damage. While there apparently was disagreement about whether Este knew the oil tank in the Weils' basement had been removed, this dispute is not material to the issues of insurance coverage that need to be resolved in this case.

## The Pollution Exclusions

The relevant language in the Business Auto Policy provides:

"We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'

"We have the right and duty to defend any 'suit' asking for these damages. However, we have no duty to defend 'suits' for 'bodily injury' or 'property damage' not covered by this Coverage Form. We may investigate and settle any claims or 'suits' as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements."

This coverage is subject to the following exclusion:

"B. 11. Pollution

"a. 'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

"(1) That are, or that are contained in any property that is:

"(a) Being transported or towed by, or handled for movement into, onto or from, the covered 'auto';

"(b) Otherwise in the course of transit by the 'insured'; or

"(c) Being stored, disposed of, treated or processed in or upon the covered 'auto';

"(2) Before the pollutants or any property in which the pollutants are contained are moved from the place where they are accepted by the 'insured' for movement into or onto the covered 'auto'; or

"(3) After the pollutants or any property in which the pollutants are contained are moved from the covered 'auto' to the place where they are finally delivered, disposed of or abandoned by the 'insured.'

"[4] Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

"Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Endorsement CA F 64 modifies this exclusion with the following language:

"Exclusion B11 POLLUTION does not apply to the actual, alleged or threatened discharge dispersal, release or escape of pollutants, other than:

"(1) acids;

"(2) Class A or Class B explosives;  and

"(3) radioactive materials as defined in 49 CFR 173.445

"if the actual, alleged or threatened discharge, dispersal, release or escape of the pollutants is the direct and immediate result of one or more of the following:

"(i) collision of a covered 'auto';

"(ii) overturn of a covered 'auto';

"(iii) fire and/or explosion which occurs during loading or unloading to or from a covered 'auto.' "

Under Ohio law, an insurance policy is a contract, and a court's construction of any contract is a matter of law. *Alexander v. Buckeye Pipe Line* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus; *Canady v. Cent. Benefits Mut. Ins. Co.* (1991), 71 Ohio App.3d 363, 366, 594 N.E.2d 37, 39. When the intent of the parties is evident from the clear and unambiguous language in the provision, the plain language of the provision must be applied. *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 10 OBR 497, 462 N.E.2d 403; *Hybud Equip. Co. v. Sphere Drake Ins. Co.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1101–1102.

The definition of a "pollutant" in the Business Auto Policy includes a liquid contaminant. Heating oil is a liquid contaminant. See R.C. Chapter 3746; see, also, *Sanborn Plastics Corp. v. St. Paul Fire & Marine Ins. Co.* (1993), 84 Ohio App.3d 302, 616 N.E.2d 988 (holding hydronic oil is a pollutant); *W. Am. Ins. Co. v. Hopkins* (Oct. 14, 1994), Clark App. No. CA 3108, unreported, 1994 WL 559005 (holding gasoline is a pollutant). The Business Auto Policy specifically excludes coverage for the "dispersal" of a pollutant. In this case, the heating oil was not delivered into an oil tank. It was dispersed into the Weils' basement. Applying the unambiguous policy language to the undisputed facts of the case, we hold that the dispersal of heating oil into the Weils' basement was the dispersal of a pollutant, and, thus, it was excluded under the Business Auto Policy. *Zell v. Aetna Cas. & Sur. Ins. Co.* (1996), 114 Ohio App.3d 677, 683 N.E.2d 1154; *W. Am. Ins. Co. v. Hopkins, supra.*

The Completed–Operations Endorsements

Este argued below and continues to argue on appeal that even if fuel oil is a pollutant under the policies, the completed-operations endorsements in the Business Auto Policy and the CGL Policy together provide coverage. As discussed above, Este's coverage arguments must be limited to the Business Auto Policy. The trial court did not discuss the completed-operations endorsement of the Business Auto Policy in its decision, apparently agreeing with Federated that the pollution exclusion overrode any endorsement.

The Business Auto Policy contains a Wrong Delivery of Liquid Products Endorsement, CA–23–05–01–87, referred to as the completed-operations endorsement, which excludes liability coverage under the following condition:

"This insurance does not apply to:

" 'Bodily injury' or 'property damage' resulting from the delivery of any liquid into the wrong receptacle or to the wrong address, or from the delivery of one liquid for another, if the 'bodily injury' or 'property damage' occurs after delivery has been completed.

"Delivery is considered completed even if further service or maintenance work, or correction, repair or replacement is required because of a wrong delivery."

We do not agree with Federated that a pollution exclusion in the body of an insurance contract overrides a special endorsement. An endorsement must be regarded as a modification of the terms of the original contract if an inconsistency clearly appears. *Am. Hardware Mut. Ins. Co. v. Mansfield Auto Truck Plaza* (1984), 15 Ohio St.3d 367, 15 OBR 487, 474 N.E.2d 310; *Workman v. Republic Mut. Ins. Co.* (1944), 144 Ohio St. 37, 28 O.O. 564, 56 N.E.2d 190, paragraph one of the syllabus; *Petrella v. Midwestern Group* (Feb. 28, 1990), Mahoning App. No. 89 C.A. 40, unreported, 1990 WL 20070. However, we also reject Este's argument that the endorsement in the Business Auto Policy covers the damages.

The completed-operations endorsement in the Business Auto Policy is, itself, an exclusion and in no way conflicts with the pollution exclusion. It adds no coverage applicable to this case. The record suggests that Este could have purchased a special "unloading" product endorsement that would have covered the claim at issue. It chose not to.

Under the undisputed facts of this case, reasonable minds can reach only one conclusion: that there is no coverage under the Business Auto Policy and that, as a matter of law, Federated is not required to indemnify Este Oil for the damages Este paid to the Weils as a result of the arbitration of the Weils' claim. Civ.R. 56(C). Accordingly, we affirm the trial court's determination that there is no

coverage under the Business Auto Policy, because heating oil is a pollutant under this policy and because the endorsement adds no additional coverage pertinent to this case.

## DUTY TO DEFEND

An insurer's duty to defend under an insurance policy is separate and distinct from the insurer's duty to indemnify. *W. Lyman Case & Co. v. Natl. City Corp.* (1996), 76 Ohio St.3d 345, 667 N.E.2d 978. Insurers generally have a much broader duty to defend. In *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, the Supreme Court held in its syllabus:

"Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."

We hold in this case that there was some doubt as to whether the Weils had pleaded a theory of recovery within policy coverage and, therefore, that Federated should have accepted defense of the claims. Accordingly, Este is entitled to the cost of the defense of the lawsuit brought by the Weils against it. However, we do not agree that Este is also entitled to the costs and fees it expended in this action. An award of attorney fees must be predicated either on statutory authority or upon a finding of bad faith. *Vance v. Roedersheimer* (1992), 64 Ohio St.3d 552, 556, 597 N.E.2d 153, 156. In a declaratory judgment action, the trial court has the authority under R.C. 2721.09 to assess attorney fees, which would clearly include fees expended by an insured in pursuing its right to coverage. *Motorists Mut. Ins. Co. v. Brandenburg* (1995), 72 Ohio St.3d 157, 648 N.E.2d 488, syllabus. This is so regardless of the conduct of the insurer. The determination by the trial court to grant or deny a request for fees will not be disturbed absent an abuse of discretion. *Id.* Even if we generously construe this action to involve a request for declaratory judgment, we find no abuse of the trial court's discretion in not awarding fees.

Alternatively, to award fees other than on a statutory basis, we would have to find evidence of bad faith, fraud, or a "stubborn propensity to needless litigation" on the part of the insurer. *G.S.T. v. Avon Lake* (1978), 59 Ohio App.2d 84, 13 O.O.3d 142, 392 N.E.2d 901. On this record, we find no such evidence. Hence, Este is limited to an award of attorney fees for its defense against the claims brought by the Weils. That part of the trial court's judgment refusing to award

those fees is reversed, and the cause is remanded solely for the assessment of fees in accordance with law.

## SUMMARY

The assignments of error are sustained in part and overruled in part. Summary judgment in favor of Federated on the issue of indemnification is affirmed. Summary judgment in favor of Federated on the issue of its duty to defend is reversed, and the cause is remanded to the trial court for the entry of judgment on that issue in Este's favor and for the assessment of attorney fees expended by Este to defend against the Weils' claims.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HILDEBRANDT, P.J., GORMAN and BETTMAN, JJ., concur.