[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Boyd v. Kingdom Trust Co.,* Slip Opinion No. 2018-Ohio-3156.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3156

BOYD ET AL. *v.* KINGDOM TRUST COMPANY ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Boyd v. Kingdom Trust Co.,* Slip Opinion No. 2018-Ohio-3156.]

*Certified question of state law—R.C. 1707.43 does not impose joint and several liability on custodian of a self-directed individual retirement account ("IRA") that purchased illegal securities on behalf and at direction of IRA account holders.*

(No. 2017-1336—Submitted May 22, 2018—Decided August 9, 2018.)

ON ORDER from the United States Court of Appeals for the Sixth Circuit, Certifying a Question of State Law, No. 17-3026.

_____

**FRENCH, J.**

{¶ 1} The United States Court of Appeals for the Sixth Circuit has certified a question of Ohio law that asks whether R.C. 1707.43, a provision of the Ohio Securities Act, imposes joint and several liability on persons who aided in the

purchase of illegal securities but did not participate or aid in the sale of the illegal securities. We answer the question in the negative.

## FACTS AND PROCEDURAL HISTORY

**{¶ 2}** Ohio residents Cynthia Boyd and Thomas Flanders, the plaintiffs-petitioners in this matter, are the alleged victims of a Ponzi scheme operated by William Apostelos. According to petitioners, Apostelos and his associates formed Midwest Green Resources, L.L.C., and WMA Enterprises, L.L.C., as the vehicles for offering illegal securities to investors. Apostelos is not a party to this case.

**{¶ 3}** Apostelos allegedly persuaded Boyd, Flanders, and others to open self-directed individual retirement accounts ("IRAs") to invest in equity interests in Midwest Green Securities and promissory notes issued by WMA Enterprises. Boyd opened a self-directed IRA account with defendant-respondent Kingdom Trust Company. Flanders opened a self-directed IRA account with defendant-respondent PENSCO Trust Company, L.L.C. Once the accounts were established, Apostelos asked investors to direct the trust companies to purchase his securities or to execute powers-of-attorney giving him the ability to direct the trust companies to purchase his securities using the investors' IRA assets. Apostelos allegedly used the money raised from these investors to pay earlier investors and promoters and to fund his own personal expenses.

**{¶ 4}** After the Ponzi scheme unraveled, Boyd and Flanders filed a class-action lawsuit in the United States District Court for the Southern District of Ohio, Western Division, seeking to hold Kingdom Trust and PENSCO Trust liable under the Ohio Securities Act, R.C. 1707.01 et seq., for their alleged roles in the scheme. The complaint does not allege that the trust companies had any role in Apostelos's Ponzi scheme aside from purchasing the unlawful securities at the investors' direction. Nor does it allege that the trust companies knew or had reason to know that Apostelos was perpetrating a fraud.

2

{¶ 5} Kingdom Trust and PENSCO Trust filed motions to dismiss for failure to state a claim. The district court granted the motions. In the absence of any allegation that the trust companies acted outside the scope of routine banking activities, the district court held that their mere involvement in the transactions is insufficient to impose liability on them under the Ohio Securities Act. *Boyd v. Kingdom Trust Co.*, 221 F.Supp.3d 975, 979 (S.D.Ohio 2016).

{¶ 6} On appeal, the United States Court of Appeals for the Sixth Circuit noted that this court had not addressed whether the Ohio Securities Act extends joint and several liability to persons who aided in the purchase of illegal securities. We agreed to answer the following question, which the Sixth Circuit certified pursuant to S.Ct.Prac.R. 9.05:

Does [R.C.] 1707.43 impose joint and several liability on a person who, acting as the custodian of a self-directed IRA, purchased—on behalf and at the direction of the owner of the self-directed IRA—illegal securities?

151 Ohio St.3d 1451, 2017-Ohio-8842, 87 N.E.3d 220.

**ANALYSIS**

{¶ 7} The Ohio Securities Act, R.C. 1707.01 et seq., governs the sale and purchase of securities in Ohio. The act requires securities to be registered (R.C. 1707.08 through 1707.13), imposes licensing requirements on dealers and salespersons (R.C. 1707.14 through 1707.19), and proscribes fraudulent conduct (R.C. 1707.44). R.C. 1707.43(A), the provision at issue here, allows the purchaser to void an unlawful sale or contract for sale made in violation of R.C. Chapter 1707. The statute also provides that

[t]he person making such sale or contract for sale, and every person that has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser * * * for the full amount paid by the purchaser and for all taxable court costs * * *.

**{¶ 8}** R.C. 1707.43(A); *see also* R.C. 1707.01(D) (defining "person" for purposes of the Ohio Securities Act as including a limited-liability company).

**{¶ 9}** The certified question asks whether R.C. 1707.43(A) imposes joint and several liability on the custodian of a self-directed IRA—here, respondents, Kingdom Trust and PENSCO Trust—that purchased illegal securities on behalf and at the direction of the IRA account holders—here, petitioners, Boyd and Flanders. We hold that it does not.

**{¶ 10}** We start with the plain language of R.C. 1707.43(A) to determine legislative intent. *Christe v. GMS Mgt. Co.*, 88 Ohio St.3d 376, 377, 726 N.E.2d 497 (2000). The statute imposes joint and several liability on three types of "persons": (1) the person making a sale or contract for sale of illegal securities, (2) "every person that has participated in * * * such sale or contract for sale," and (3) "every person that has * * * aided the seller in any way in making such sale or contract for sale." R.C. 1707.43(A). The plain language of R.C. 1707.43(A) requires a person to have some nexus with the sale of illegal securities. The statute does not extend liability to persons whose only involvement in a transaction is the purchase of illegal securities.

**{¶ 11}** The General Assembly has demonstrated its intent to treat the "sale" and "purchase" of securities as two distinct acts by defining the two terms separately in the Ohio Securities Act. A "sale" includes "every disposition, or attempt to dispose, of a security." R.C. 1707.01(C)(1). A "purchase" includes "every acquisition of, or attempt to acquire, a security." R.C. 1707.01(GG)(1). At

the same time, when the General Assembly intended to include both purchases and sales in one of the act's prohibitions, it has expressly done so. For example, the act defines "fraud" as including "any fictitious or pretended purchase or sale of securities." R.C. 1707.01(J). R.C. 1707.44(N) prohibits misleading statements from being used in the "purchase or sale of securities." While there are various provisions in the Ohio Securities Act in which the General Assembly included both purchases and sales within the statute's ambit, R.C. 1707.43(A) is not one of them.

{¶ 12} Boyd and Flanders argue that R.C. 1707.43(A)'s use of the phrase "in any way" indicates the General Assembly's intent to impose liability on anyone participating in a transaction, even if the individual or entity was not involved in and did not induce the particular sale at issue. Their selective reading of the statute, however, omits the words that follow the phrase "in any way." The sentence in its entirety imposes liability on a person who "aided the seller in any way *in making such sale or contract for sale*." (Emphasis added.) R.C. 1707.43(A). The statute does not create liability absent some conduct that aided a seller in a sale of illegal securities.

{¶ 13} The weight of Ohio authority offers no support for petitioners' reading of the statute. To the contrary, Ohio courts have consistently construed R.C. 1707.43(A) as imposing liability only on persons who played a role in the sale of unlawful securities, such as acting in concert with the seller of an unlawful investment. *See, e.g.*, *Federated Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App.3d 366, 392-393, 738 N.E.2d 842 (10th Dist.2000) (bank that directly participated in underwriting of investment and acted as financial adviser to issuer can be held liable under R.C. 1707.43); *Boland v. Hammond*, 144 Ohio App.3d 89, 94, 759 N.E.2d 789 (4th Dist.2001) (defendant who relayed proposed terms of sale to investors, arranged meetings between seller and investors, and distributed promissory notes to investors can be held liable under R.C. 1707.43).

**{¶ 14}** And Ohio courts have held that a financial institution's mere participation in a transaction, absent any aid or participation in the sale of illegal securities, does not give rise to liability under R.C. 1707.43(A). " '[T]he willingness of a bank to become the depository of funds does not amount to a personal participation or aid in the making of a sale.' " *Wells Fargo Bank v. Smith*, 12th Dist. Brown No. CA2012-04-006, 2013-Ohio-855, ¶ 29, quoting *Hild v. Woodcrest Assn.*, 59 Ohio Misc. 13, 30, 391 N.E.2d 1047 (C.P.1977); *see also Boomershine v. Lifetime Capital*, *Inc.*, 2d Dist. Montgomery No. 22179, 2008-Ohio-14, ¶ 15 (plaintiffs failed to show that bank serving as escrow agent aided in the sale of investments).

**{¶ 15}** Nevertheless, with the plain language of the statute and the weight of Ohio authority against them, petitioners argue that in any event, their complaint contains allegations that the trust companies worked in concert with Apostelos to effectuate the sale of his illegal securities. Nothing in our holding today would insulate from liability a self-directed IRA custodian who colludes with the seller in an unlawful sale of securities or actively participates or aids in the sale of illegal securities. But the certified question before us is limited to the liability of a self-directed IRA custodian whose only alleged participatory conduct was the *purchase* of illegal securities on behalf and at the direction of the owner of a self-directed IRA. We leave it for the Sixth Circuit to decide whether the facts as alleged in petitioners' complaint are sufficient to survive dismissal at the pleading stage under the legal standard we announce today.

## CONCLUSION

**{¶ 16}** We answer the certified question in the negative and conclude that R.C. 1707.43 does not impose joint and several liability on a person who, acting as the custodian of a self-directed IRA, purchased—on behalf and at the direction of the owner of the self-directed IRA—illegal securities.

So answered.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FISCHER, DEWINE, and DEGENARO, JJ., concur.

_____

Sebaly, Shillito & Dyer, Toby K. Henderson, and Scott S. Davies, for petitioners.

Ulmer & Berne, L.L.P., Frances Floriano Goins, and Daniela Paez, for respondent Kingdom Trust Company.

Porter, Wright, Morris & Arthur, L.L.P., and Caroline H. Gentry; and Shartsis Friese, L.L.P., Jahan P. Raissi, and Roey Z. Rahmil, for respondent PENSCO Trust Company, L.L.C.

Womble Bond Dickinson, L.L.P., Katrina L.S. Caseldine, Kevin A. Hall, and M. Todd Carroll, in support of respondents for amicus curiae Retirement Industry Trust Association.

Meyer Wilson Co., L.P.A., and David P. Meyer, in support of neither party for amicus curiae Public Investors Arbitration Bar Association.

_____